JOHNSON; Appellant,

v.

**UNIVERSITY OF CINCINNATI et al., Appellees.**

[Cite as *Johnson v. Univ. of Cincinnati* (1991), 68 Ohio App.3d 141.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900414.

Decided Sept. 18, 1991.

*Clements, Mahin & Cohen* and *Edward Cohen,* for appellant.

*Beckman, Weil, Shepardson & Faller* and *Barbara J. Howard,* for appellee University of Cincinnati.

*Lee I. Fisher,* Attorney General, and *William D. Haders,* for appellees Industrial Commission of Ohio and Ohio Bureau of Workers' Compensation.

---

*Per Curiam.*

In his appeal from the trial court's order granting summary judgment for the defendants-appellees University of Cincinnati (the "university"), the Industrial Commission of Ohio (the "commission") and the Ohio Bureau of Workers' Compensation (the "bureau"), the plaintiff-appellant, Carl Johnson, assigns two errors: (1) the trial court erred when it granted summary judgment to the defendants on his workers' compensation claim for an injury that occurred on February 16, 1987, and (2) the trial court erred when it granted summary judgment to the defendants, and denied his motion for partial summary

judgment, on his workers' compensation claim for his injury of September 21, 1983. Because genuine issues of material fact exist as to both claims, the assignments of error are sustained.

Carl Johnson filed two claims for workers' compensation benefits due to injuries that occurred in the course of and arising from his employment with the university. According to the stipulations of the parties in the record, Johnson reported to the University of Cincinnati Health Services on September 21, 1983, that he was experiencing back pain. He was diagnosed as suffering acute back strain and was sent home from the Health Services office. He was paid four hours of sick time for that date. A report dated September 28, 1983, prepared by his supervisor and department head, states that Johnson's injury occurred while he was attempting delivery of materials with a two-wheeled truck over a flight of steps.

On September 15, 1986, Johnson prepared an application for medical benefits related to the 1983 injury which was filed with the bureau on January 5, 1987. The commission's district hearing officer denied Johnson's first claim as not being timely filed. The order was affirmed on an appeal to the regional board of review. The commission then refused to allow Johnson's further appeal and, pursuant to R.C. 4123.519, he appealed to the court of common pleas. The appeal was assigned case No. A–8807570.

Johnson's second injury allegedly occurred on February 16, 1987, while he was lifting a carton in the course of his employment. His petition, filed pursuant to R.C. 4123.519 in his second appeal to the court of common pleas under case No. A–8905965, states that the injury was diagnosed as strain and sprain of the low-and-mid back, and that he timely filed an application for medical benefits for the injury. His petition also states that the claim was denied by the commission's hearing officer based on a finding that he did not sustain the injury in the course of and arising from his employment, and that he exacerbated a pre-existing condition. A series of administrative appeals yielded the same result as Johnson's first claim, and on January 3, 1990, both appeals were consolidated in the common pleas court.

The defendants filed a motion for summary judgment on the consolidated actions, arguing that "[p]laintiff is without jurisdiction to bring this claim, because it is barred by the applicable statute of limitations, R.C. 4123.84(A)." In their memorandum in support of their motion, the defendants argued that the second action, case No. A–8905965, was based on the exacerbation of the pre-existing condition which was the subject of the 1983 injury and that, if the court lacked jurisdiction over the first claim, it necessarily lacked jurisdiction as to the second claim. No evidentiary materials beyond the parties' stipulations were filed, and the record contains no materials from the administrative

appeals or, in particular, from the appeal of Johnson's second claim concerning his February 16, 1987 injury. Johnson's motion for partial summary judgment on his 1983 injury claim was denied by the trial court, which granted summary judgment to the defendants on both claims.

Under Civ.R. 56(A), a party against whom a claim is asserted may move, with or without supporting affidavits, for summary judgment in his favor on all or any part of the claim. A motion for summary judgment may be granted if, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, transcripts of evidence and written stipulations of fact in a light most favorable to the party opposing the motion, the court determines that:

"(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and * * * that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; Civ.R. 56(C).

■ With respect to the first assignment of error, concerning Johnson's second claim for his February 16, 1987 injury, the record contains no evidence, and the stipulations filed in the common pleas court do not mention the injury or claim. Further, the defendants' motion for summary judgment and supporting memorandum address only the statute of limitations and fail specifically to address any other area of Johnson's claim. The motion and memorandum, therefore, did not confer a reciprocal burden upon Johnson to set forth specific facts which show the existence of a genuine issue for trial. See *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. We do not believe that the broad language contained in the third syllabus paragraph of the Ohio Supreme Court's recent decision in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, approving both *Celotex v. Catrett* (1986), 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273–74, and *Mitseff, supra,* was intended to overrule *Mitseff's* holding that a moving party under Civ.R. 56 has the obligation to provide specific reasons and whatever evidence may be necessary to establish that it is entitled to judgment. See Supreme Court Rules for the Reporting of Opinions 1(B). We, therefore, hold that the trial court's decision that Johnson failed in his burden to produce evidence on the remaining issues is in error.

■ In view of the lack of evidentiary material in the record before it, the trial court could not conclude that Johnson's second injury was merely an aggravation of the previous, time-barred injury. Further, we note the Ohio Supreme Court's recent holding that a work-related aggravation of a pre-

existing condition is not required to be of any particular magnitude to entitle the claimant to receive workers' compensation benefits. *Schell v. Globe Trucking, Inc.* (1990), 48 Ohio St.3d 1, 548 N.E.2d 920. Therefore, Johnson's failure to allege a "substantial" aggravation of his injury did not entitle the defendants to summary judgment. In sum, based on the record before the trial court, it could not be said that no genuine issues of material fact remained to be litigated, and summary judgment therefore was improperly granted as to Johnson's second claim for his 1987 injury. Johnson's first assignment of error is well taken.

Johnson's second assignment of error addresses his first claim based on his 1983 injury, and asserts that the trial court both erroneously granted summary judgment to the defendants and erroneously denied his motion for partial summary judgment directed to that claim. The parties agree that the crucial issue is the application of a tolling provision under the statute of limitations contained in R.C. 4123.84(A)(2). The statute provides:

"(A) In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury or death:

" * * *

"(2) The employer, with knowledge of a claimed compensable injury or occupational disease, has paid wages in lieu of compensation for total disability * * *."

The injury in question occurred on September 21, 1983. The claim was filed on January 5, 1987. Johnson argues that the record discloses, if not his entitlement to judgment as a matter of law, then at least the existence of genuine issues of material fact concerning the employer's knowledge of his claimed compensable injury and its payment of wages in lieu of compensation for his total disability.

The supervisor's report form contained in the record describes how the injury occurred, but does not state whether Johnson intended to file a claim for compensation with the bureau. Also among the evidentiary materials incorporated by reference into the parties' stipulations of fact is Johnson's January 5, 1987 C–3 claim form, bearing his statement, "I filed workers comp for this injury on 12–31–83, the papers were sent to Mrs. Werlan at Student Health * * *."

The defendants assert three arguments in support of their entitlement to summary judgment. First, they claim that the university lacked "knowledge of a claimed compensable injury" at the time it paid Johnson wages for four hours of sick time. The record, however, fails to indicate when Johnson was

paid the wages.[1]   Arguably, the tolling provision could be construed to apply only when an employer has paid compensation with knowledge that a workers' compensation claim was being filed, as opposed to mere knowledge that an employee had been injured.  See *Wargetz v. Villa Sancta Anna Home for the Aged* (1984), 11 Ohio St.3d 15, 11 OBR 49, 462 N.E.2d 1215.[2]  This issue cannot be determined on the record before us, however, absent evidence as to whether the university paid Johnson sick pay either before or after he claims to have filed his first claim for workers' compensation in December 1983. Johnson's assertion in his 1987 claim that he submitted a claim to the university in 1983 is sufficient to create a genuine issue of material fact that precludes summary judgment in the defendants' favor as to the issue of the university's knowledge of a compensable injury at the time the sick wages were paid.  See *Bultman v. Brunswick Corp.* (Aug. 8, 1988), Huron App. No. H–87–40, unreported, 1988 WL 86917.

Second, the defendants argue that the sick wages paid to Johnson cannot be considered wages in lieu of compensation within the meaning of R.C. 4123.-84(A)(2).  The defendants claim that "compensation" is a term of art within the law of workers' compensation, defined as follows: "those workers' compensation benefits payable directly to the claimant as a substitute for wages, an award of impairment and earning capacity, a quasi-damage award for loss of physical or mental function, or as a substitute for the support of a killed worker."  Nackley, Ohio Workers' Compensation (1989) 129, Section 14.1. The defendants argue that the four hours of sick wages paid to Johnson are merely benefits, as opposed to compensation.

---

1. Although the defendants argue in their brief that Johnson was paid the sick wages on the day following his injury, defendants' brief at 9, 11, their assertion is unsupported in the record under App.R. 9 and therefore cannot be adopted by this court.

2. In *Wargetz*, the Supreme Court of Ohio held that before the present version of R.C. 4123.84(A)(2) was added to the statute by an amendment effective in 1979, a 1976 version of R.C. 4123.84(A) did not violate equal-protection rights.  The previous version of the statute denied employees of state-fund-participating employers the opportunity afforded employees of self-insuring employers to toll the statute and invoke the commission's continuing jurisdiction by merely receiving payment of compensation or benefits, regardless of the extent of the employer's knowledge of a compensable injury under what is now R.C. 4123.84(A)(3).  The distinction was upheld in *Wargetz* because a self-insuring employer has a greater administrative need for notice of claims than a state-fund-participating employer.
   The legislature apparently intended to extend the same opportunity to employees of state-fund-participating employers when it added the present version of R.C. 4123.84(A)(2), although it is unclear, and not necessary to decide on the record before this court, whether the legislature intended to require a state-fund-participating employer merely to have knowledge of an injury that may form the basis of a potential claim, as under R.C. 4123.84(A)(3), or to have knowledge of an actual claim, before permitting the statute of limitations to be tolled by the payment of compensation to an injured employee.

The term "compensation" is not defined by the workers' compensation statutes found in R.C. Chapter 4123, although in 1959 R.C. 4123.01 was amended to add definitions of "compensation" and "benefits." The amendment included the furnishing of medical services under the definition of "benefits," and included benefits under the definition of "compensation." Young, Workmen's Compensation Law (2 Ed.1983) 242, Section 13.15. R.C. 4123.84 was also amended in 1959 to provide that the payment or furnishing of compensation or benefits tolled the statute. In 1963, however, the statutes were amended to remove the definitions of "compensation" and "benefits" from R.C. 4123.01 and to require under R.C. 4123.84 either that written notice of the injury be provided to the bureau or commission or that a self-insured employer pay or furnish benefits as now provided under R.C. 4123.84(A)(3)(b). *Id.* The 1963 amendment was viewed as a more restrictive procedure, "unless the employer fail[ed] to apply the process of adjudication prior to the payment of any one of the enumerated bills." *Id.* at 243.

In sum, at the time of the 1963 amendments and at the present time, the question whether a particular payment by an employer tolls the running of the statute of limitations is ultimately a question whether an employer had notice of a potential injury and claim. See, also, *Felske v. Daugherty* (1980), 64 Ohio St.2d 89, 18 O.O.3d 313, 413 N.E.2d 809; *Francis v. Chrysler Corp.* (1975), 44 Ohio St.2d 229, 73 O.O.3d 518, 339 N.E.2d 826; *Bush v. Mayfield* (1986), 31 Ohio App.3d 38, 31 OBR 53, 508 N.E.2d 181; *Chomyszak v. Cincinnati Bengals* (Aug. 18, 1982), Hamilton App. No. C–810828, unreported, 1982 WL 8683. In the present case, we cannot conclude from the record before us that there is no genuine issue of material fact as to whether the university made the payment with knowledge of Johnson's injury or of an actual or potential claim to be asserted by him.

The defendants' third and final argument that they are entitled to summary judgment with respect to the 1983 claim is that Johnson's absence from work for four hours does not constitute a "total disability" within the meaning of R.C. 4123.84(A)(2). The task of defining the term "total disability," like the term "compensation," has been left by the legislature to judicial interpretation. We first note that the workers' compensation statutes make a distinction between permanent and temporary total disability. See R.C. 4123.56. The distinction is between compensating a loss of earning capacity, in the case of a permanent total disability, and the loss of earnings, in the case of a temporary total disability. *State, ex rel. Bunch, v. Indus. Comm.* (1980), 62 Ohio St.2d 423, 16 O.O.3d 449, 406 N.E.2d 815. Furthermore, both forms of disability, permanent and temporary, can be considered total disability. "Temporary total disability" has been further defined as an employee's inability to

return to work in his former position of employment. *State, ex rel. Ramirez, v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586. Beyond the distinction between permanent and temporary disability, however, courts have not placed a minimum temporal limit on the general meaning of "total disability" within workers' compensation law.

██ The defendants argue that the limitation in R.C. 4123.55 on the payment of compensation modifies the requirement that an employee must suffer a total disability and be compensated for it before successfully invoking both the tolling provision of R.C. 4123.84(A)(2) and the commission's continuing jurisdiction under R.C. 4123.52. R.C. 4123.55 provides, in pertinent part:

"No compensation shall be allowed for the first week after an injury is received or occupational disease contracted and no compensation shall be allowed for the first week of total disability, whenever it may occur, unless and until the employee is totally disabled for a continuous period of two weeks or more, in which event compensation for the first week of total disability, whenever it has occurred, shall be paid, in addition to any other weekly benefits which are due, immediately following the second week of total disability."

To adopt the defendants' construction of this statute, which would require a disability to last more than one week before it may be considered a total disability, would mean that injuries initially manifested by a period of disability of less than two weeks, which reappear more than two years later for an extended period of disability, are noncompensable under the workers' compensation statutes. We do not find this construction in accord with R.C. 4123.95, requiring liberal construction in favor of employees of R.C. 4123.01 to 4123.94, and R.C. 4123.84 in particular. See *Kittle v. Keller* (1967), 9 Ohio St.2d 177, 38 O.O.2d 414, 224 N.E.2d 751. Furthermore, we do not believe that this construction properly recognizes that R.C. 4123.55, which defines limits of compensation, uses the phrase "first week of total disability," and that by implication this phrase includes a total disability lasting only one day or one hour. Finally, the statute refers only to compensation, and does not purport to limit either initial or continuing jurisdiction, pursuant to R.C. 4123.52, over a claim. We, therefore, hold that the mere fact that Johnson was absent from work for only four hours does not entitle the defendants to judgment as a matter of law based on his failure to show that he was in fact "totally disabled" within the meaning of R.C. 4123.84(A)(2).

We also hold that, in accord with Civ.R. 56(C), Johnson offered sufficient evidentiary material to support his contention that he was totally disabled to raise a genuine issue of material fact and preclude summary judgment. The parties' stipulation that he was diagnosed as suffering acute back strain and

sent home from the health services office, although insufficient to show that as a matter of law he was unable to return to work in his former position of employment, still demonstrates that reasonable minds could come to different conclusions on the question of his total disability at that time. See *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.2d 466, 364 N.E.2d 267. Although the defendants correctly argued to the trial court that Johnson failed to establish for purposes of his summary judgment motion that he was totally disabled, see *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, the defendants likewise demonstrated neither the absence of genuine issues of material fact in light of their stipulations, nor their entitlement to judgment as a matter of law. See *Temple, supra;* Civ.R. 56. We, therefore, conclude that neither party was entitled to summary judgment on Johnson's first claim based on his 1983 injury.

The judgment of the trial court is reversed as to both of Johnson's claims and this cause is remanded to the trial court for further proceedings in accordance with this decision and law.

*Judgment reversed*
*and cause remanded.*

GORMAN, P.J., SHANNON and UTZ, JJ., concur.